**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | **Case No. 20-35493** |
| | § | |
| **1960 FAMILY PRACTICE, PA** | § | **Chapter 7** |
| | § | |
| *Debtor.* | § | |
| | § | |

**TRUSTEE'S *AMENDED* MOTION TO COMPROMISE CONTROVERSY**
**WITH DEFENDANTS AND AUTHORIZE DISTRIBUTION TO CREDITORS**

**THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

**A HEARING ON THIS MOTION TO COMPROMISE CONTROVERSY HAS BEEN SCHEDULED FOR DECEMBER 4, 2023 AT 2:00 PM IN COURTROOM #402, 515 RUSK, HOUSTON, TEXAS 77002.**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

Eva S. Engelhart, Chapter 7 Trustee (the "***Trustee***") hereby files this Amended *Motion to Compromise Controversy and Authorize Distributions to Creditors* (the "**Motion**"), seeking court approval for the settlement of multiple disputes with Huong Le, Huong Le as Representative for Minh Nguyen, Allergy of Texas, PLLC, Physicians Alliance of Red Oak, Viventi Med LLC, Texas Radiology Associates, and Woodlands Imaging, LP (the, "**Defendants**").

## SUMMARY OF FACTS AND RELIEF REQUESTED

For the last two years, the Trustee has been involved in contentious litigation with Dr. Le and her wholly owned entities.  After two failed mediations, and multiple appeals in the underlying bankruptcy case, the Trustee has reached a global settlement with Dr. Le and the other Defendants. The proposed resolution provides a 100% distribution to all unsecured creditors and payment of 100% of all projected administrative claims.  In addition, all pending disputes related to claim objections filed by Dr. Le have been resolved. The Trustee respectfully requests that this Court approve the attached global settlement and allow the Trustee to make distributions to unsecured creditors.

## RELEVANT FACTS

### A. THE PARTIES

1.    On November 9, 2020, Huong Le (**"Dr. Le"**) as president filed a Chapter 7 bankruptcy case on behalf of 1960 Family Practice, PA ("**Bankruptcy Case**").

2.    Eva S. Engelhart was appointed to serve as the Chapter 7 Trustee (the, **"Trustee"**).

3.    On September 7, 2021, the Trustee filed an Adversary Proceeding (Case No. 21-03906) against Dr. Le and the following defendants (the, **"Adversary"**):

    a.    Minh Nguyen (Dr. Le's husband);

    b.    Allergy of Texas PLLC (**"AOT"**);

    c.    Woodlands Imaging, LP (**"Woodlands"**);

    d.    Viventi Med, LLC (**"Viventi"**);

    e.    Texas Radiology Associates (**"TRA"**);

    f.    Physicians Alliance of Red Oak (**"PARO"**); and

    g.    Express Specialty Pharmacy, LLC (**"ESP"**) [1].

4.    After the Adversary was filed, Dr. Le's husband, Minh Nguyen, passed away and Dr. Le was substituted as his representative in the Adversary.

5.    The remaining defendants, AOT, Woodlands, Viventi, PARO and TRA are all

---

[1] Express Specialty Pharmacy ("**ESP**") is the only defendant that is not owned, operated or controlled by Dr. Le and is not included in this settlement.  Furthermore, ESP is currently unrepresented by counsel as their counsel recently withdrew.  The Trustee previously attempted to settle the claims against ESP and was unsuccessful.  If this Global Settlement is approved, the Trustee will seek to dismiss her claims against ESP as ESP is no longer operating and the Trustee believes that there is no likelihood of recovery on the claims against ESP.

owned and operated by Dr. Le.

6. Collectively, Dr. Le, Dr. Le as Representative for Dr. Nguyen, AOT, Woodlands, Viventi, and TRA are referred to as **"The Defendants"**.

7. Collectively, The Defendants and the Trustee are referred to as **"The Parties".**

## B. Claims in the Adversary

8. On September 7, 2021, the Trustee filed her original complaint against the Defendants (the, **"Complaint"**).

9. The Complaint was amended multiple times, and the Second Amended Complaint was filed on March 28, 2023 ("**Amended Complaint**").[2]

10. The Trustee asserted the following causes of action against the Defendants in the Amended Complaint:

    a.     Cause of Action No. 1: Breach of fiduciary duty against Dr. Le.

    b.     Cause of Action No. 2: Knowing participation against Dr. Nguyen.

    c.     Cause of Action No. 3: Conspiracy to Breach Fiduciary Duty claim against Dr. Nguyen.

    d.     Cause of Action No. 4: Denuding the Corporation against Dr. Le.

    e.     Cause of Action No. 9: Recovery of Avoidable Preference Payments against PARO.

    f.     Causes of Action No. 10 - 13: Fraudulent transfers against AOT.

    g.     Causes of Action No. 14 - 17: Fraudulent transfers against TRA.

    h.     Causes of Action No. 18 - 21: Fraudulent transfers against Viventi.

    i.     Causes of Action No. 22 - 25: Fraudulent transfers against Woodlands.

## C. Nature and Estimated Value of Claims against Defendants

**Claims Against Dr. Le and Dr. Nguyen**

11. As discussed above, the Trustee sued Dr. Le for breaching her fiduciary duties owed to 1960 Family Practice, PA (the, "**Debtor**") and for denuding the Debtor. The Trustee also sued Dr. Le's husband, Dr. Minh Nguyen, for conspiring and knowingly participating with his wife to breach her fiduciary duties (**"Claims Against Dr. Le and Dr. Nguyen"**).

---

[2] Exhibit A – Second Amended Complaint

12.     The facts pled by the Trustee in the Amended Complaint that support the Trustee's Claims Against Dr. Le and Dr. Nguyen are summarized as follows:

In 1995, Dr. Le founded the Debtor which was a successful medical practice. Dr. Le and Dr. Nguyen (the, "**Couple**") then embarked on a new business venture to build a private hospital ("**Providence Hospital**"). After Providence Hospital was built, the Couple transferred all of the Debtor's physicians and patient files to the non-profit and instructed the Debtor's former physicians to refer the Debtor's patients to Providence Hospital. It was in The Couple's financial interest to divert these services to their hospital. Not only would it increase the profits of Providence Hospital – as insurance companies typically pay hospitals three times more than they do primary care physicians for the same services, but it would ultimately increase the value of Providence Hospital when it was eventually sold by the Couple. By transferring all of the physicians to the Non-Profit, the Couple destroyed the Debtor's value as the main source of revenue for the Debtor was the income generated by the Debtor's physicians.

13.     Therefore, the critical question for the Trustee to answer in determining the value of the claims against Dr. Le and Dr. Nguyen, turns on the value of the Debtor's business prior to its destruction.

14.     The Trustee employed Chin Yu with Calvetti Ferguson to assist her in determining the Debtor's value. The Trustee selected Mr. Yu as he possesses over 20 years of public accounting, consulting and executive corporate management and corporate governance experience.  Mr. Yu is a Certified Valuation Analysis, Certified Fraud Examiner, and holds a Master in Business Administration[3].

15.     On April 30, 2023, Mr. Yu issued his expert report and found that the Debtor had an enterprise value of $13.6 million ("**Expert Report**")[4]. In response to the Trustee's Expert Report, Dr. Le retained two experts to issue rebuttal reports (**"Rebuttal Reports"**).  In the Rebuttal Reports, Dr. Le's experts allege that Mr. Yu's analysis in the Expert Report was materially flawed and deviated from accepted methods of valuation and unreliable.  However, none of the Defendants produced an expert report regarding the Debtor's value or solvency.

16.     Therefore, based on the Expert Report, the Trustee believes that the value of the

---

[3] Exhibit B – Chin Yu CV
[4] Exhibit C – Expert Report

Claims against Dr. Le and Dr. Nguyen are worth approximately $13.6 million.

**Claim Against PARO**

17.     In Cause of Action No. 9, the Trustee pled that PARO received preference payments in the total amount of $63,541.52 (**"Preference Payments"**).

18.     After the Adversary was filed, the Trustee and PARO entered into an Agreed Injunction that provided that the Preference Payments would be deposited in the registry of the Court.[5] The Preference Payments remain in the registry of the Court.

19.     Therefore, the Trustee believes that the claims against PARO are worth $63,541.52.

**Claims Against AOT, Viventi, TRA and Woodlands**

20.     The Trustee also sued AOT, Viventi, TRA and Woodlands for the following fraudulent transfers:

a.     AOT: Fraudulent transfers totaling $674,151.47.

b.     TRA: Fraudulent transfers totaling $1,910,678.50.

c.     Viventi: Fraudulent transfers totaling $1,087,332.93.

d.     Woodlands: Fraudulent transfers totaling $185,276.00.

### D. CONTENTIOUS LITIGATION IN THE ADVERSARY AND BANKRUPTCY CASE

21.     The litigation between the Trustee and the Defendants has been extremely contentious from the onset.  As evidenced by the attached docket, the parties have disputed nearly every issue in the Adversary:[6]

a.     Defendant's Objection to Trustee's Motion to Amend Complaint (Doc. No. 62);

b.     Trustee's Objection to Defendants' Motion to Strike (Doc. No. 64);

c.     Objection to Defendant's Motion to Extend Discovery (Doc. No. 87);

d.     Dr. Nguyen's Motion to Dismiss Adversary (Doc. No. 120);

e.     TRA's Motion to Dismiss Adversary (Doc. No. 121);

f.     Woodland's Motion to Dismiss Adversary (Doc. No. 122);

g.     Viventi's Motion to Dismiss Adversary (Doc. No. 123);

h.     Dr. Le's Motion to Dismiss Adversary (Doc. No. 130);

i.     AOT's Motion to Dismiss Adversary (Doc. No. 131);

---

[5] Exhibit D – PARO Agreed Injunction
[6] Exhibit E – Docket in Adversary

j.       Emergency Motion for Leave, Motion to Seal and Motion to Quash (Doc. No. 133);

k.       Motion for Protective Order filed by Defendants (Doc. No. 153);

l.       Motion to Reconsider filed by Trustee (Doc. No. 154);

m.       Motion to Quash Amegy Subpoena (Doc. No. 185 and 186);

n.       Motion to Compel Dr. Le (Doc. No. 214);

o.       Motion to Extend Time to File Motion to Substitute Party (Doc. No. 221);

p.       Motion to Substitute Party filed by Trustee (Doc. No. 248);

q.       Motion to Strike filed by Defendants (Doc. No. 274);

r.       AOT's Motion to Dismiss Adversary (Doc. No. 276);

s.       Dr. Le's Motion to Dismiss Adversary (Doc. No. 277);

t.       Dr. Le and AOT's Motion for Jury Trial (Doc. No. 279);

u.       Dr. Le and AOT's Motion to Withdraw Consent (Doc. No. 280);

v.       Dr. Le and AOT's Motion to Withdraw Reference (Doc. No. 281);

w.       Trustee's Emergency Motion to Correct Scheduling Order (Doc. No. 284);

x.       TRA's Motion to Dismiss (Doc. No. 285);

y.       Dr. Nguyen's Motion to Dismiss (Doc. No. 286);

z.       Woodlands Motion to Dismiss (Doc. No. 287);

aa.       Viventi's Motion to Dismiss (Doc. No. 288);

bb.       Dr. Nguyen's Motion to Withdraw Reference (Doc. No. 293);

cc.       Dr. Nguyen's Motion to Stay Discovery (Doc. No. 296);

dd.       Trustee's Motion to Compel Dr. Le  (Doc. No. 302);

ee.       Trustee's Motion for More Definite Statement (Doc. No. 315);

ff.       Motion to Strike (Doc. No.320);

gg.       Trustee's Motion to Compel PARO (Doc. No.329);

hh.       Trustee's Emergency Motion for Separate Trial (Doc. No. 376);

ii.       Defendant's Emergency Motion to Modify Scheduling Order (Doc. No. 407); and

jj.       Defendant's Objection to Court's Report and Recommendation (Doc. No. 449);


22.       In addition to the contention litigation in the Adversary, the Trustee and Dr. Le have had the following disputes in the underlying Bankruptcy Case that have resulted in multiple

orders on appeal:[7]

    a.    Trustee's Motion for Show Cause against Dr. Le (Doc. No. 124);

    b.    Dr. Le's Expedited Motion to Continue Show Cause Hearing (Doc. No. 128);

    c.    Objection to Trustee's Application to Employ Walker & Patterson (Doc. No. 163);

    d.    Trustee's Response to Dr. Le's Objection to Claim (Doc. No. 183);

    e.    Trustee's Response in Opposition to Dr. Le's Objection to Claim (Doc. No. 184);

    f.    Trustee's Response and Joinder in Motion to Abate (Doc. No. 205);

    g.    Trustee's Response to Motion to Abate (Doc. No. 206);

    h.    Dr. Le's Notice of Appeal of Order Employing Walker & Patterson (Doc. No. 232);

    i.    Dr. Le's Notice of Appeal related to Order on Motion to Abate (Doc. No. 247);

    j.    Dr. Le's Motion for Leave to Appeal (Doc. No. 248);

    k.    Trustee's Motion for Show Cause (Doc. No. 255);

    l.    Trustee's Motion to Abate (Doc. No. 264);

    m.    Notice of Appeal of Order on Motion to Abate (Doc. No. 290); and

    n.    Trustee's Emergency Motion to Compel Dr. Le (Doc. No. 336).

### E. PRIOR ATTEMPTS TO SETTLE AND MEDIATE

23.    Although the Trustee and the Defendants have vigorously litigated nearly every issue in the Adversary and the Bankruptcy Case, the Parties have also attempted to resolve their disputes on multiple occasions.

24.    On May 12, 2023, the Court entered an *Order Granting the Parties Emergency Motion for an Order to Mediate* with former Judge Jones ("**First Mediation**").[8] On May 25, 2023, the Parties attended the First Mediation and reached an impasse.

25.    The Parties continued to discuss settlement, and subsequently filed a second Motion to Mediate with Paul Clote (**"Second Mediation"**).  Mr. Clote is a litigation attorney and has served as a mediator, arbitrator and special master in complex commercial cases in Texas.  On August 29, 2023, the Court entered an Order granting the Second Mediation.[9] The Parties attended the Second Mediation with Mr. Clote on September 21, 2023, and again reached an impasse.

---

[7] Exhibit F – Docket Main Case
[8] Exhibit G – First Mediation Order (Doc. No. 363 in Adversary)
[9] Exhibit H – Second Mediation Order (Doc. No. 284- Main Case)

26.     After the Second Mediation, Mr. Clote made a mediator's proposal that was <u>not</u> accepted by the Parties.

### F. GLOBAL SETTLEMENT

27.     After months of attempted negotiations, and two failed mediations, the Trustee and the Defendants have now entered into a global settlement agreement (**"Global Settlement"**).[10]

28.     The attached Global Settlement sets out all of the terms negotiated by the Parties. The essential financial terms of the Global Settlement are summarized as follows:

    a.     The Defendants agree to pay the estate a total of $5 million (**"Settlement Funds"**) within 7 days of an entry of an order approving this settlement.  The Settlement Funds have already been transferred by the Defendants to the Probus Law Firm's IOLTA account to hold until the Global Settlement is approved by the Court.

    b.     The money held in the registry of the Court that was previously deposited by PARO will be turned over to the estate.

    c.     Upon approval of the Global Settlement, Dr. Le shall have four days to cause her entities to withdraw all of their proofs of claim, with the exception of proof of claim No. 11 owned by Vantage Specialty Health Services, LLC ("**Vantage POC**").  The Vantage POC shall remain, however it is subordinated, meaning that it will only be paid by the Trustee if there are sufficient funds remaining after all other unsecured claims and administrative claims have been paid in full.

    d.     In the event that the estate does not have sufficient funds to pay Walker & Patterson, PC the full amount of their hourly attorney's fees (after all unsecured creditors have been paid in full), Dr. Le agrees to indemnify the estate for the Hourly Fees incurred by Walker & Patterson, PC within fifteen (15) days of receiving written notice from the Trustee.  Hourly Fees are defined as all attorney's fees and expenses incurred by the bankruptcy estate related to the Show Cause Proceeding, the Claim Objection Process, and Objection to Employment of Walker & Patterson, PC.

    e.     Dr. Le agrees to dismiss all pending appeals filed in the underlying Bankruptcy Case[11].

---

[10] <u>Exhibit I</u> – Global Settlement Agreement

[11] <u>Exhibit J</u> – Appeal of Employment Order; <u>Exhibit K</u> – Vantage's Notice of Appeal of Abatement Order; <u>Exhibit L</u> – Dr. Le's Notice of Appeal of Abatement Order.

## G. Claim Objections and Resolutions

29.     In addition to the Global Settlement, the Trustee has assisted two of the largest creditors of the Bankruptcy Case resolve claim objections that impacts the Global Settlement.

**Cypress MOB:**

30.     WFMC 2016-C34 Northwest Freeway, LLC as successor in interest to Cypress MOB (**"Cypress MOB"**) filed a proof of claim in the amount of $1,103,464.59 (**"Cypress POC"**).

31.     Pursuant to a Court Order, the estate acquired a 30% interest in the Cypress POC.[12]

32.     Subsequently, the Court entered an Agreed Order providing that the Cypress has an allowed unsecured claim in the amount of $950,000.00.[13]

33.     On October 25, 2023, Cypress MOB and Dr. Le entered into an agreement which among other things required Cypress MOB to withdraw the Cypress POC in exchange for a direct payment of $750,000.00 from Dr. Le to Cypress MOB (**"Cypress Agreement"**).[14]

34.     As a result of the Cypress Agreement, the estate will receive an additional $225,000.00 from Cypress (*i.e.* 30% of the Cypress POC), and Cypress MOB will withdraw its proof of claim.

**Texas Emergency Room Services**

35.     On April 6, 2022, Texas Emergency Room Services, PA (**"TERS"**) filed a proof of claim in the amount of $2,634,123.75 (**"TERS POC"**).

36.     On June 8, 2023, Dr. Le via her wholly owned entity, Vantage Specialty Health Services, LLC (**"Vantage"**) filed an objection to the TERS POC (**"Vantage Objection"**).

37.     On October 24, 2023, the Trustee filed an Objection to the TERS POC (**"Trustee's Objection"**).

38.     On October 26, 2023, the Court entered an Agreed Order resolving both the Vantage Objection and the Trustee's Objection (**"TERS Agreed Order"**).

39.     Pursuant to the TERS Agreed Order, TERS shall have an allowed unsecured claim in the amount of $124,974.23.[15]

---

[12] Exhibit M - Cypress MOB Sale Order
[13] Exhibit N – Agreed Order Resolving Claim
[14] Exhibit O – Cypress MOB Settlement Agreement
[15] Exhibit P - Agreed Order with TERS – pending court approval.

**KME Holding**

40. On May 18, 2023, KME Holdings, LLC (**"KME"**) filed its amended proof of claim in the amount of $1,564,448.71 ("**KME POC**").

41. On July 28, 2023, Vantage filed an objection to the KME POC (**"KME Claim Objection"**).

42. Subsequently, the Court entered an order abating the KME Claim Objection.

43. On November 2, 2023, the Trustee, Vantage and KME uploaded an Amended Agreed Final Order resolving the KME Claim Objection (Doc. No. 382).

## ARGUMENT AND AUTHORITIES

44. FED. R. BANKR. P. 9019 governs compromises with the trustee. An analysis of the factors in *Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414 (1968), will aid the court's decision in granting the compromise. The factors include: (i) the probability of success in the litigation, (ii) difficulty of collection of any judgment, (iii) the complexity of the litigation; and (iv) deference to the concerns of creditors. These factors will each be addressed in the paragraphs below.

### FACTOR 1: PROBABILITY OF SUCCESS IN THE LITIGATION.

45. In order to address the first factor related to the "probability of success in litigation", the Trustee asserts that each Defendant must be evaluated separately.

   a. The Truste believes that she would likely prevail on her claims against Dr. Le, Woodlands Imaging, Viventi, PARO, TRA and AOT.

   b. The Trustee is less confident regarding her probability of success against Dr. Nguyen as he passed away during the pendency of the Adversary and the Trustee did not have an opportunity to depose Dr. Nguyen.

46. Although the Trustee is confident that she would succeed on the claims against the Defendants at trial, the Trustee does have concerns regarding these causes of action being tried to a jury. Although the District Court has yet to rule on the Defendant's Motion to Withdraw the Reference, the Trustee feels confident that the District Court will accept the Bankruptcy Court's recommendation that the reference be withdrawn.

47.     The Trustee is concerned that a jury is less likely to understand the nuance of the bankruptcy process and the claim objection proceedings and how these issues tie into the damages asserted by the Trustee in the Adversary.  Furthermore, the Trustee is not confident that a jury would award punitive damages in a case where any surplus would be returned to Dr. Le.

48.     In summary, while the Trustee is confident that she has a high probability of success, leaving the decision to a jury carries an inherent risk.

49.     In addition to the pending Adversary, Dr. Le has appealed the Court's Order Employing Walker & Patterson, PC as special counsel (**"Employment Order Appeal"**). The Trustee is extremely confident that she would succeed in the Employment Order Appeal.

### FACTOR 2: DIFFICULTY OF COLLECTION ON A JUDGMENT.

50.     The Trustee makes a distinction between each of the Defendants when addressing the second factor related to the difficulty of collecting on a judgment.

### Dr. Le and Dr. Nguyen

51.     As to Dr. Le and Dr. Nguyen, the Trustee believes that Dr. Le has access to funds to pay any judgment awarded against her in the Adversary. However, the Trustee has far greater concerns about actually collecting on a judgment against Dr. Le.

52.     For the last two years, Dr. Le has made it abundantly clear that she will appeal an adverse judgment. The Trustee does not take Dr. Le's comments as idle threats as Dr. Le has already appealed multiple orders in the underlying Bankruptcy Case.

53.     In addition, the Trustee is concerned that even if she obtained a judgment against Dr. Le would likely hire multiple sophisticated law firms to assist her in any collection efforts. Therefore, the Trustee believes that this factor alone provides the Court with a significant basis to approve the Global Settlement.

### PARO

54.     Regarding PARO, the Trustee entered into an Agreed Injunction shortly after the Adversary was filed, which required PARO to deposit the full amount of the Preference Payments into the registry of the Court.

55.     Therefore, the Trustee believes that there would be absolutely no difficulty in collecting a judgment against PARO.

**AOT, TRA, Woodlands and Viventi**

56.     The Trustee believes that it would be extremely difficult to collect a judgment against AOT, TRA, Woodlands and Viventi (**"Le Entities"**).

57.     The Le Entities are owned and controlled by Dr. Le. According to the information provided by the Le Entities' Accountants, none of these companies are doing any business except wind down functions since Dr. Minh Nguyen's passing in December 2022.

58.     The Trustee believes it would be extremely difficult to collect on a judgment against non-operating entities.  Furthermore, as discussed above, the Trustee has the same concern that Dr. Le would appeal an adverse judgment against the Le Entities and hire a team of attorneys that would inevitably make collecting on a judgment more difficult.

## FACTOR 3: COMPLEXITY OF THE LITIGATION.

59.     The litigation in the Adversary is moderately complex.  The Trustee believes that the fraudulent transfer causes of action against Dr. Le's entities are not complex.  The Trustee believes that the claims against Dr. Le are not necessarily complex.  However, the Trustee believes that the claims against Dr. Le as representative for Dr. Nguyen, are significantly complex as Dr. Nguyen passed away during the pendency of the Adversary and the Trustee was unable to obtain sworn testimony from Dr. Nguyen prior to his passing.

## FACTOR 4:  DEFERENCE TO CREDITORS.

60.     The Trustee submits that the compromise of this dispute is beneficial to the estate in that the settlement avoids delay, additional expense, and the uncertainty of a jury trial. Furthermore, the Global Settlement provides creditors with a quicker distribution.

61.     Most importantly, the Global Settlement provides a 100% distribution to all creditors and administrative claims.

62.     In order to fully address this fourth factor, the Trustee will address the following topics as it relates to the financial effect of the Global Settlement on the estate:

a.     Total assets available for distribution to creditors.

b.     Total claims to be paid.

c.     Potential distribution to creditors.

d.     Issues raised in the Trustee's Motion for Show Cause Order.

e.      Avoidance of delay and uncertainty at trial.

**Assets of the Estate**

63.     To date, the estate has the following assets that will be distributed to the creditors should the Global Settlement be approved:

a.      Settlement Funds: Dr. Le will transfer $5 million to the estate (**"Settlement Funds"**).

b.      PARO Preference Payment in Court Registry: $63,541.52 (**"PARO Payment"**)

c.      Money on Hand: $236,570.34

d.      Proof of Claim in Everest Bankruptcy Case: During the pendency of the Bankruptcy Case, the Trustee filed a proof of claim in a bankruptcy case filed by Everest Real Estate (**"Everest Claim"**).  The Trustee anticipates an additional payment of $8,887.75 pursuant to the Everest Claim.

e.      30% Cypress MOB Claim:  $225,000.00 (**"30% Cypress Claim"**)

f.      (The PARO Payment, the Money on Hand, the Everest Claim are collectively referred to as the "**Additional Assets**").

64.     In total, the Settlement Funds and the Additional Assets total **$5,533,999.61.**

**Proofs of Claim**

65.     Dr. Le, on behalf of her wholly owned entities, acquired the following proofs of claim during the pendency of the Adversary (**"Le Claims"**):

a.      Claim No. 3: Houston Medical ER, LLC

b.      Claim No. 4: Vantage Specialty Health Services, LLC

c.      Claim No. 11: Vantage Specialty Health Services, LLC (**"Vantage Claim"**)

d.      Claim No. 17: Community ER, LLC

e.      Claim No. 20: Viventi Med, LLC

f.      Claim No. 34: Rayford ER, LLC

g.      Claim No. 36: Community ER, LLC

h.      Claim No. 42: Physicians Alliance of Red Oak, LP

66.     As part of the Global Settlement, Dr. Le has agreed to withdraw all of the Le Claims, with the exception of the Vantage Claim.  However, as part of the Global Settlement, the Vantage Claim is subordinated, meaning that it will only be paid by the Trustee if there are

sufficient funds after all other allowed unsecured claims and administrative claims have been paid in full.

67.     In summary, if the Global Settlement is approved, then all of the Le Claims (with the exception of the Vantage Claim) will be withdrawn, which will provide sufficient funds to pay all unsecured creditors and administrative fees 100%, and still have additional funds to pay the subordinated Vantage Claim and provide a surplus to the Debtor.[16]

**Anticipated Administrative Claims**

68.     The Trustee anticipates that the estate will be required to pay the following administrative claims should the Global Settlement be approved:

    a.    Walker & Patterson, PC:

        i.    40% of the Global Settlement: $2,000,000.00.

        ii.    40% of the PARO Payment: $25,416.60.

        iii.    40% of the Cypress MOB Claim: $90,000.00.

        iv.    Estimated expenses: $78,147.47.

        v.    Estimated Hourly Fees related in Bankruptcy Case: $41,730.00.

    b.    Trustee's commission in the approximate amount of $111,867.75.

    c.    Hourly Fees to Ross Banks in the approximate amount of $4,000.00.

    d.    Accountant fees in the approximate amount of $10,000.00.

    e.    Estimated taxes for the estate in the amount of $25,000.00.

69.     In summary, the Trustee anticipates that a total of $2,386,161.82 in the above referenced administrative costs will be paid, prior to any distribution to unsecured creditors.

**Projected Distribution to Creditors**

70.     The Trustee anticipates that the creditors of this estate and all administrative claims will receive a **100% distribution** based upon payment of the $5 million Global Settlement.

71.     The chart below summarizes the projected distribution to creditors:

---

[16] Pursuant to this Court's *Order Authorizing Interim Distribution and Trustee Fee* (Docket No. 91), the Trustee previously made an interim distribution to unsecured creditors in the amount of $300,000.00, including the Trustee's compensation in the amount of $32,369.27.

| | |
|---|---|
| **Total Available Funds**: | $5,533,999.61 |
| **Total Approx. Administrative Claims:** | $2,386,161.82 |
| **Total Unsecured Creditors:** | $1,687,694.23 |
| **Expected Estimated Surplus** | $1,460,143.56 |

## Show Cause Order

72.     Paragraph 12 of the Global Settlement provides that "at the request of the Parties and approval of the Court, the Show Cause Order shall be vacated". The Trustee believes that it is in the best interest of the estate that this occurs.

73.     On August 17, 2023, the Trustee filed a Motion for an Order to Show Cause Dr. Le (**"Show Cause Motion"**).[17]

74.     On August 21, 2023, the Court entered its Order Show Cause Hearing (**"Show Cause Order"**).[18]

75.     Pursuant to the Show Cause Order, Dr. Le was ordered to appear and show cause whether:

a.     Dr. Le conducted business on behalf of the Debtor regarding the Class Action Arbitration by Capstone Associated Services, Ltd and the purported undisclosed $3 million arbitration award without permission from the Court (**"Arbitration Award"**).

b.     Dr. Le performed any other acts post-petition related to the Debtor without authority from the Court (**"Unknown Acts"**).

c.     Dr. Le is in civil contempt of the Court's prior show cause order for failing to disclose that she conducted business on behalf of the Debtor post-petition (**"Contempt Issue"**).

d.     Dr. Le failed to make accurate disclosures in the Debtor's schedules, statement of financial affairs, and pleadings filed with the Court (**"Disclosure Issue"**).

e.     Dr. Le abused the claim objection process for an improper purpose that is

---

[17] Exhibit Q – Trustee's Motion for Show Cause (Doc. No. 255 in Bankruptcy Case).
[18] Exhibit R – Show Cause Order

interfering with the administration of the bankruptcy estate (**"Claim Objection Process"**).

76.    In reaching the Global Settlement, the Trustee specifically considered all of the issues raised in the Show Cause Order in order to make certain that any financial effect on the estate was addressed. Below is the Trustee's analysis regarding the Show Cause Order and its effect on the Global Settlement:

a.    **Continued Investigation**:  As part of the Global Settlement, Dr. Le and her counsel have agreed to meet with the Trustee and present their explanation for Le's conduct addressed in the Show Cause Order and answer any remaining questions and concerns of the Trustee.[19]

b.    **Arbitration Award**:  Prior to filing the Motion for Show Cause, the Trustee learned that the Debtor was a named plaintiff in an Arbitration Award in the following case: *Scott K. Sullivan, et al. v. The Feldman Law Firm, LLP* (**"Arbitration Award"**).

  i.    As part of the Show Cause Motion, the Trustee alleged that Dr. Le acted on behalf of the Debtor by including the Debtor as a plaintiff in the arbitration proceeding that resulted in the Arbitration Award. After the Show Cause Order was entered, the Trustee served a subpoena on counsel for the class plaintiffs and obtained all communications and documents related to the Arbitration Award.

  ii.    In addition, Trustee's counsel spent significant time speaking to plaintiff's counsel to fully understand the claims asserted in the Arbitration Award. After conducting an extensive investigation, the Trustee has determined that the Arbitration Award would likely provide no value to the estate.

  iii.    Although Dr. Le improperly signed documents on behalf of the Debtor as a plaintiff in the Arbitration, the claims that are the basis of the Arbitration Award do not appear to be property of the estate.

  iv.    In her investigation, the Trustee learned that pre-petition, Dr. Le created an insurance company called Family Casualty Corp. ("**FCC**").  FCC entered into a contract with Stuart Feldman (the Defendant in the Arbitration

---

[19] <u>Exhibit I</u> - Paragraph 11 of Global Settlement

Proceeding) which was subsequently breached by Feldman. The Arbitration Award was a result of the breach to FCC, not the Debtor. The Debtor (along with multiple other entities owned by Dr. Le) were merely insured by FCC. The Trustee then reviewed FCC's formation documents to confirm that the Debtor never had an ownership interest in FCC.

v. Furthermore, although the Arbitration Award was confirmed, it has been appealed by the Defendant, and counsel for the Plaintiffs have not recovered any money related to the Arbitration Award. Finally, should Feldman actually pay the Arbitration Award in full, the Class Action counsel do not have authority to issue any payment to the Debtor. This means that the Trustee would then be required to initiate litigation against FCC to determine whether the estate has an interest in the Arbitration Award.

vi. Based on the Trustee's current understanding of the Arbitration Award, the Trustee would not pursue a claim against FCC.

vii. Therefore, the Trustee believes that the estate was not financially harmed in any way by Dr. Le's failure to disclose the Arbitration Award.

viii. Finally, as part of the Global Settlement, Dr. Le requested that the estate assign any rights it may have to the Arbitration Award to Dr. Le. The Trustee agreed to this term as she believes that the Arbitration Award provides no value to the estate and would be abandoned.

c. **Unknown Acts**: In the Show Cause Motion, the Trustee requested the Court to order Dr. Le to appear and testify whether she conducted any other business on behalf of the Debtor. The Trustee understands that without a show cause hearing this question may go unanswered.

i. However, the Trustee does not believe that vacating the Show Cause Order will have a detrimental financial effect on the estate as the Trustee is not releasing any party from undisclosed assets of the estate. Furthermore, all creditors are being paid in full pursuant to the Global Settlement.

d. **Contempt Issue**: As part of the Motion for Show Cause, the Trustee alleged that Dr. Le is in contempt of the First Show Cause Order which required Dr. Le to disclose any other acts she has conducted on behalf of the Debtor.

i.      Clearly, Dr. Le did not disclose the Arbitration Award and the Trustee believes that Dr. Le did not comply with the First Show Cause Order.

ii.     However, Dr. Le's failure to comply with the First Show Cause Order (by failing to disclose the Arbitration Award) has not caused any financial harm to the estate, with the exception of attorney's fees billed by Walker and Patterson, PC in relation to the Show Cause Order.

iii.    However, in order to address this financial harm to the estate, Dr. Le has agreed to indemnify the estate for all attorney's fees related to the Show Cause Motion should the estate not have sufficient funds to pay all attorney's fees and all general unsecured claims.[20]

iv.    As discussed above, the Global Settlement provides sufficient funds to pay all attorney's fees related to the Show Cause Order and pay the unsecured creditors in full.

e.    **Disclosure Issue**: In the Motion for Show Cause, the Trustee alleged that Dr. Le failed to make accurate disclosures in the Debtor's Schedule F.

i.      Specifically, the Trustee alleged that Dr. Le improperly disclosed that the Debtor owes her $650,134.67 as an "unpaid medical director".

ii.     The Trustee believes that the estate does not owe Dr. Le any money for services allegedly performed as the Debtor's medical director.

iii.    However, the disclosure of an alleged debt owed to Dr. Le does not financially affect the administration of the estate as the Global Settlement specifically provides that Dr. Le is prohibited from filing any proofs of claim in the Bankruptcy Case.[21]

f.    **Claim Objection Process**: The Trustee alleged in her Show Cause Motion that Dr. Le abused the claim objection process for an improper purpose that interfered with the administration of the bankruptcy estate. Specifically, the Trustee alleged that Dr. Le 1) acted improperly when attempting to purchase a proof of claim filed by

---

[20] Exhibit I - Paragraph 14 of the Global Settlement. The Global Settlement provides that Dr. Le will indemnify the estate up to $49,400.00 should the estate not have sufficient fund to pay WP after all unsecured creditors have been paid in full.
[21] Exhibit I - Paragraph 8 of the Global Settlement.

Henry Schein (**"Schein Claim"**); and 2) made false representations to Stefan Gray regarding the claim objection process (**"Gray Claim"**).

i.     The Trustee asserts that any alleged improper activity as it relates to the Show Cause Order and the Schein Claim has no direct financial effect on the estate as Schein previously sold its proof of claim and is no longer a creditor.

ii.     The Trustee also asserts that in relation to the Gray Claim, this Court entered an order allowing a portion of the Gray Claim. Pursuant to the Global Settlement, the Gray Claim will be paid. Therefore, the Trustee asserts that any alleged improper activity as it relates to the Show Cause Order has no financial effect on the estate.

iii.     In summary, all claim objections filed in this bankruptcy have now been resolved.

g.     **Multiplication of Pleadings and Appeals**: In the Trustee's Show Cause Motion, the Trustee alleged that Dr. Le improperly multiplied proceedings by filing baseless pleadings and appeals.

i.     The Global Settlement reached between the Parties, resolves this issue as Dr. Le has agreed to withdraw her appeals and indemnify the estate for any attorney's fees that were incurred as a result of her conduct.

h.     **Harm to the Estate** – In summary, the Trustee believes that the Global Settlement addresses every issue raised in the Show Cause Motion as it relates to the administrative and financial effect on the estate.

## II. DISTRIBUTION TO UNSECURED CREDITORS

77.     Should the Court approve the Global Settlement, the Trustee requests permission to make a final distribution to all unsecured creditors in this case.

78.     All proofs of claim have been filed and/or amended and withdrawn.

79.     There are no pending claim objections in this case.

80.     Contingent upon approval of the Global Settlement, the Estate will have sufficient funds to pay all of the creditors outlined in the attached *Exhibit S*. The estate's professionals will file a separate fee application and there are ample funds to pay all expected claims.

81.     As discussed above, the Trustee anticipates not only paying 100% of the claims, but anticipates a significant surplus to the Debtor.

82.     This bankruptcy case was filed almost three years ago and the creditors have waited a substantial amount of time to be paid on their claim.

83.     Therefore, the Trustee seeks an order authorizing her to pay all parties per the attached distribution on a final basis.

## RELIEF REQUESTED

84.     The Trustee requests that this Court approves the Global Settlement and authorize distribution to unsecured creditors on a final basis.

85.     By approving this Global Settlement, all issues between the estate and the Defendants will be resolved.  Not only will the Adversary be dismissed, but all of the pending appeals in the underlying Bankruptcy Case will be dismissed with prejudice and the matters raised in the Show Cause Motion will be resolved.

As the Court is well aware, the Trustee has spent nearly three years attempting to bring value to this estate.  After two years of contentious litigation, two failed mediations, and multiple appeals, the Trustee has reached a Global Settlement which she believes is in the best interest of the estate as it provides 100% recovery to all creditors and administrative claims, and resolves all pending disputes between all parties.

**WHEREFORE**, Eva S. Engelhart, Chapter 7 Trustee, prays that the court grant this Motion and approve the compromise of the controversy between the parties on substantially the same terms as set out in the Settlement Agreement attached hereto as Exhibit "A", authorize the parties to take all actions and execute all documents necessary to effectuate the compromise, and for such other relief as the court finds appropriate and just to grant.

By:  */s/ Miriam T. Goott*
Miriam T. Goott
attorney-in-charge
SBN 24048846
COUNSEL FOR TRUSTEE

OF COUNSEL:
WALKER & PATTERSON, P.C.
P.O. Box 61301
Houston, TX 77208
mgoott@walkerandpatterson.com
713.956.5577 (telephone)
713.956.5570 (fax)

## CERTIFICATE OF SERVICE

I, Miriam Goott, hereby certify that I served a true and complete copy of the foregoing Amended Motion to Approve Compromise was served on all parties listed in the attached Service List by first class mail and/or ECF on November 2, 2023.

*/s/Miriam T. Goott*
Miriam T. Goott